| | | |
|---|---|---|
| **ANTHONY G. BROWN**<br>Attorney General | **STATE OF MARYLAND**<br>OFFICE OF THE<br>ATTORNEY GENERAL<br>Department of Public Safety and<br>Correctional Services<br>6776 Reisterstown Road, Suite 313<br>Baltimore, Maryland 21215 | **STUART M. NATHAN**<br>Assistant Attorney General<br>Principal Counsel |
| **CANDACE McLAREN LANHAM**<br>Chief of Staff | | **MICHAEL O. DOYLE**<br>Assistant Attorney General<br>Deputy Counsel - Litigation |
| **CAROLYN QUATTROCKI**<br>Deputy Attorney General | | |

Hon. Julie R. Rubin
United States District Court for the District of Maryland
101 West Lombard Street, Chambers 3A
Baltimore, Maryland 21201

   ***Disability Rights Maryland, Inc. v. Robert L. Green et al.*** **(Case No.: 21-cv-02959-JRR)**
   **Subject: Defendants' Request to File a Motion for Protective Order**

Dear Judge Rubin:

  Pursuant to the "Letter Order Regarding the Filing of Motions" entered on September 21, 2022 (ECF 40-2), Defendants request to file a motion for protective order in the above-referenced matter. Despite good faith efforts between the parties, a protective order is necessary because the discovery served on Defendants by Plaintiff is overly broad, unduly burdensome, and seeks irrelevant information that is not proportional to the needs of Plaintiff's case. Further, a protective order is needed to address an issue pertaining to Plaintiff's use of "Attorneys' Eyes Only" confidentiality designations under the Stipulated Protective Order (ECF 50).

  In this case, Plaintiff seeks prospective relief, only, based upon its claims that Defendants' restrictive housing policies and practices violate the statutory and constitutional rights of incarcerated individuals with serious mental illness ("SMI"). *See* Am. Complaint (ECF 18). On November 21, 2022, Plaintiff served the following written discovery requests on Defendants: (1) DRM's First Set of Interrogatories to Defendant Robert Green; (2) DRM's First Set of Interrogatories to Defendant Lynda Bonieskie; and (3) DRM's First Set of Requests for Production of Documents to Defendant Green. On December 19, 2022, Defendants sent a detailed letter to Plaintiff's counsel outlining their preliminary objections to the discovery requests and requested to meet and confer. The parties had multiple meet and confer conferences: on January 11, 18, 26, and 27, 2023, and February 3, 2023, and exchanged numerous emails in an attempt to reach a resolution without Court intervention.

  In conjunction with these meet and confer conferences, Defendants produced 1,839 pages of documents to Plaintiff, including a list of all incarcerated persons on restrictive housing with SMI as of January 1, 2023, and 22 Departmental policies pertaining to housing, disability accommodations, mental health care, medical care, suicide prevention, and case management. Plaintiff's discovery requests also sought entire case records of every incarcerated individual in segregation from 2015 to date, including those who were not diagnosed with SMI. As of January 1, 2023, there were over 1,100 individuals, including those without a diagnosis of SMI, in restrictive housing at DPSCS's Division of Correction's ("DOC") facilities that are the subject of Plaintiff's Amended Complaint. In order to communicate to Plaintiff that its discovery requests are overly broad, unduly burdensome, and not proportional to the needs of Plaintiff's case, Defendants produced the entire file of one, "exemplar" incarcerated person to include information from the electronic offender case management system, medical records, requests for administrative remedies ("ARP"), ARP appeals, and commitment file and parole file, for the duration of the individual's custody. The exemplar incarcerated person's file consisted of 783 pages of records. Defendants also identified numerous other discovery requests that impose objectionable burdens on Defendants. Accordingly, Defendants requested Plaintiff to narrowly tailor its requests.

Plaintiff issued "Revised" Interrogatories and Requests for Production of Documents to Defendant Green on March 7, 2023. Further, commencing on March 8, 2023, Plaintiff divided the initial Requests for Production of Documents to Defendant Green[1] among other Defendants. However, many of Plaintiff's discovery requests contain the same objectionable issues Defendants previously articulated in their December 2022 letter and during the meet and confer conferences. As a result, Defendants seek to move for a protective order with respect the following[2]:

**1. Plaintiff's Interrogatories to Defendant Lynda Bonieskie[3]**: Instructions and Definitions (not consistent with the revised Instructions and Definitions generally agreed upon[4] between the parties); Interrogatory No. 1 (seeking a voluminous amount of physical records over an eight-year timeframe and requiring approximately 40 hours of labor to compile all responsive information); and Interrogatory Nos. 3, 4, and 5 (improperly seeking documents in violation of Federal Rule 33).

**2. Plaintiff's Revised Interrogatories to Defendant Robert Green:** Interrogatory Nos. 7, 11, 17, and 18 (improperly seeking documents in violation of Federal Rule 33); Interrogatory Nos. 2, 9, 10, 11, and 13 (implicating thousands of physical and electronic records of incarcerated persons over an eight-year timeframe that are not readily accessible, and requiring hundreds of hours to compile the relevant information); Interrogatory No. 4 (seeking non-readily accessible records pertaining to the dispensation of psychotropic medication, where such records are physical in nature, and where on average, there are 9,000 incarcerated persons on psychotropic medication per month); and Interrogatory No. 12 (seeking records of all incarcerated persons' access to recreational activities, for an eight-year time frame which implicates thousands of paper and electronic records at numerous DPSCS facilities).

**3. Plaintiff's Requests for Production of Documents to Defendant Carolyn Scruggs**: Request No. 1 (encompassing both paper and electronic records of thousands of individuals, confined in numerous DPSCS institutions, over a period of many years); Request Nos. 2 and 3 (implicating multiple third-party contractors, and for the amount of time Plaintiff is seeking such documents, it would take months to compile the requested information); and Request No. 5 (implicating thousands of paper and electronic records, many of which are created at an institutional level on a daily basis, and include electronic and paper records that are not readily accessible; to produce these records would require hundreds of hours of labor across DPSCS).

**4. Plaintiff's Requests for Production of Documents to Defendant Wayne Hill**: Request No. 14 (encompassing both paper and electronic records of thousands of individuals, confined in numerous DPSCS institutions, over a period of many years); Request Nos. 6, 7, 17, and 18 (implicating thousands of paper and electronic records, many of which are created at an institutional level on a daily basis, and are not readily accessible; to produce these records would require hundreds of hours of labor across DPSCS); and Request Nos. 1, 2, 3, 4, 5, 11, 15, and 16 (requesting policies and procedures that exist in multiple divisions at the Departmental level, and also at the institutional level, implicating paper and electronic records requiring approximately 60 to 80 hours of labor and communication per facility and division to compile).

**5. Plaintiff's Requests for Production of Documents to Defendant Bonieskie:** Request Nos. 1 and 2 (encompassing both paper and electronic records of thousands of individuals, confined in numerous DPSCS institutions, over a period of many years); Request No. 7 (seeking non-readily accessible information pertaining to the dispensation of psychotropic medication, which is physical in nature, and where on average, there are 9,000 incarcerated persons on psychotropic medication per month); and Request Nos. 3, 4, 5, 6, 9, and 11 (requesting policies and procedures that exist in multiple divisions at the Departmental level, and also at the

---

[1] Plaintiff initially issued 62 Requests for Production of Documents to Defendant Green, which violates Local Rule 104(1.).
[2] Given the fluid nature of discovery in this action, if Defendants are approved to file the proposed Motion for Protective Order, Defendants reserve the right to raise additional issues requiring judicial intervention in their Motion.
[3] Plaintiff did not revise its Interrogatories to Defendant Bonieskie despite Defendants' preliminary objections in December 2022.
[4] Defendants object to Plaintiff's instructions, definitions, and requests pertaining to draft policies and procedures because drafts are not relevant and not proportional to Plaintiff's case in chief, and many drafts are subject to the deliberative process privilege.

institutional level, implicating paper and electronic records requiring approximately 60 to 80 hours of labor and communication per facility and division to compile).

**6. Plaintiff's Requests for Production of Documents to DPSCS**: Request No. 2 (retrieving all responsive documents, communications, and information to fulfill this singular request, would require approximately 25 hours of labor from DPSCS's employees to compile).

Additionally, as noted, Defendants requested an "exemplar" incarcerated person to demonstrate the burden imposed on Defendants in Plaintiff requesting complete files for *all* incarcerated persons, including those who are not diagnosed as having a SMI, who may have been on segregation at any point in time between 2015 to date. Upon producing the name of the exemplar incarcerated person to Defendants, Plaintiff indicated that the identity of the individual should be treated as "Attorneys' Eyes Only" pursuant to the Stipulated Protective Order. This designation is improper because undersigned counsel is required to communicate with their clients regarding the incarcerated persons included in Plaintiff's records requests, to not only obtain their records, but to also be able to discuss these individuals' respective cases and conditions of confinement to properly defend the Defendants in this case. Additionally, undersigned counsel subsequently learned that the exemplar incarcerated person is not diagnosed as having a SMI by DPSCS. It is Defendants' position that Plaintiff is not entitled to records pertaining to incarcerated persons who do not have a SMI without an executed release from each individual given that they fall outside of the statutory scope of DRM's position as a protection and advocacy ("P&A") group[5]. Moreover, any requests pertaining to incarcerated persons who do not have a SMI are not proportional to the need of Plaintiff's case, they are not relevant, and Defendants should not be required to produce those individuals' records in discovery.

Since the filing of the litigation, Plaintiff has also utilized its statutory authority as a P&A group to obtain records of individuals confined in restrictive housing, as well as to conduct site visits of restrictive housing and special needs units at several DOC institutions, and interview individuals in restrictive housing. These site visits, which Defendants' counsel have coordinated and attended because of the ongoing litigation, have taken approximately seven (7) hours each. Plaintiff has noted its intent to conduct additional site visits at five institutions in April and May 2023. Plaintiff has also issued records requests to DPSCS in connection with its statutory authority as a P&A group. Plaintiff most recently issued such a request on January 31, 2023, which include requests for medical records, case records, and use of force reports, for an additional 12 incarcerated persons. These site visits and record requests through Plaintiff's P&A authority provide Plaintiff an additional method, beyond the discovery in the case, for obtaining records and information directly relevant to the issues raised in Plaintiff's Amended Complaint. Even apart from these non-discovery requests, which themselves involve a significant expenditure of staff time and resources to comply, the vast discovery outlined above imposes an undue burden on Defendants and is not proportional to the needs of the case. Accordingly, Defendants seek to move for a protective order in this action.

Thank you for your consideration of this matter.

Sincerely,

*/s/ Michael O. Doyle*
Michael O. Doyle
*/s/ Samantha N. Lewis*
Samantha N. Lewis
Assistant Attorneys General

Copies to: All Counsel of Record

---

[5] *See* 42 U.S.C. § 10801(b)(1) and 42 U.S.C. § 10802(4)(A)